# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

**MARGARET ANN REESE**  CASE NO. 3:18-CV-1616

**VERSUS**  MAG. JUDGE KAREN L. HAYES

**ANDREW SAUL, COMMISSIONER, U.S.
SOCIAL SECURITY ADMINISTRATION**

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **REVERSED and REMANDED** for further proceedings.

## Background & Procedural History

Margaret Ann Reese filed the instant applications for Title II disability insurance benefits and supplemental security income payments on December 29, 2015. (Tr. 14, 143-148, 150-152). She alleged disability as of December 1, 2011, because of degenerative arthritis in her back, hands, and shoulders. (Tr. 163, 175). The state agency denied the claims at the initial stage of the administrative process. (Tr. (Tr. 59-92). Thereafter, Reese requested and received an October 5, 2017, hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-58). However, in a February 23, 2018, written decision, the ALJ determined that Reese was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a stocker and baker as those jobs are actually and generally performed. (Tr. 11-21). Reese appealed the adverse decision to the

Appeals Council. On October 12, 2018, however, the Appeals Council denied Reese's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On December 14, 2018, Reese sought review before this court. Succinctly restated, she seeks reversal for further administrative proceedings on the grounds that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Following the submission of briefs, the matter is ripe.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

"A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir.2018) (citation omitted). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be

3

made.

        (5)     If an individual is unable to perform past relevant work, then other factors
                including age, education, past work experience, and residual functional
                capacity must be considered to determine whether the individual can make
                an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

### ALJ's Findings

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 16). At step two, she found that the claimant suffered from the severe impairment of asthma. (Tr. 16-18).[1] The ALJ concluded, however, that the impairment(s) was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 18).

**II.    Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform work at all exertional levels, except that she would need to avoid exposure

---

[1] She further determined that the claimant's medically determinable impairments of back pain and anxiety were non-severe. *Id*.

to concentrated fumes, chemicals, etc., and would need to work in an indoor/climate-controlled environment. (Tr. 18-20).

**III.     Step Four**

At step four of the sequential evaluation process, the ALJ, determined that the claimant was able to return to her past relevant work as a stocker and baker, both as she actually performed those jobs, and as the work is performed generally in the national economy. (Tr. 20).[2]

### Non-Exhaustive Chronology of Relevant Medical Evidence

On May 4, 2011, Reese saw David Barnes, M.D. (Tr. 257-259). Barnes diagnosed asthma and menopausal disorders. *Id.*

On February 14, 2012, plaintiff returned to Dr. Barnes. (Tr. 260-262). She was not in pain, but needed medication refills. *Id.* She denied shortness of breath, cough, wheezing, nausea, vomiting, and diarrhea. *Id.* Her lungs were clear bilaterally. *Id.* Barnes diagnosed menopausal disorders and asthma. *Id.*

Reese returned to Dr. Barnes on July 16, 2013. (Tr. 263-266). She had stopped taking Celexa, but needed a prescription refill. *Id.* Her lungs were clear. *Id.* The diagnoses remained the same. *Id.*

On January 10, 2014, Reese saw Dr. Barnes for medication refill. (Tr. 267-270). Her lungs were clear bilaterally. *Id.* The diagnoses remained unchanged. *Id.*

On May 21, 2014, plaintiff returned to Dr. Barnes for medication refill. (Tr. 271-274). She complained of chest congestion, cough, shortness of breath. *Id.* She wanted Premarin. *Id.* She had mild scattered expiratory wheezes bilaterally. *Id.* Barnes diagnosed low body mass and

---

[2] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

asthma. *Id.* He prescribed prednisone and proair. *Id.*

Reese began chiropractic treatment with Eliah Globke, D.C., on July 16, 2014, for complaints of neck, right shoulder, and low back pain, plus headaches and upper back pain. (Tr. 323-325). She denied any gastrointestinal issues. *Id.* She had constant neck pain that was a five to six on a ten-point scale. *Id.* She occasionally experienced numbness into her upper back. *Id.* She had two surgeries in 2010 for low back pain. *Id.* She had constant pain that "catches" at times, and numbness in her toes. *Id.* She had two migraine headaches one week earlier. *Id.* Globke diagnosed scoliosis, degeneration of the cervical "intervertebrae," cervical displacement, lumbar disc displacement, thoracic disc displacement, deep and superficial muscle spasms; cervical radiculitis, and sciatic neuritis. *Id.*

Reese continued to receive chiropractic treatment on an almost weekly basis from September 2014 through May 2016. (Tr. 329-402, 510-513). She also testified at the administrative hearing that she continued to see Globke once per week. (Tr. 41). Her symptoms waxed and waned throughout this period. *Id*.

Reese next saw Dr. Barnes on December 10, 2014. (Tr. 275-278). She was not in pain, rather her chief complaint was medication refill. *Id.* Her lungs were clear bilaterally. *Id.* She was diagnosed with post-menopausal replacement. *Id.*

On August 18, 2015, plaintiff returned to Dr. Barnes. (Tr. 279-281). Her chief complaint was medication refill. *Id.* Her diagnosis remained unchanged. *Id.*

Plaintiff saw Dr. Barnes on September 4, 2015, for complaints of congestion and asthma flare-up. (Tr. 282-286). She exercised four times per week. *Id.* Her lungs were clear bilaterally. *Id.* Barnes diagnosed postmenopausal hormone replacement, asthma, sinusitis, and bronchitis. *Id.*

On January 20, 2016, Reese returned to Dr. Barnes for prescription refill. (Tr. 287-290).

6

She exercised four times per week. *Id.* Her lungs were clear. *Id.* Her diagnoses remained unchanged from her baseline diagnoses. *Id.*

On February 12, 2016, plaintiff returned to Dr. Barnes for complaints of a sore throat, headache, ear pain, and abdominal pain. (Tr. 291-296). Her lungs were clear bilaterally. *Id*. Barnes diagnosed asthma, acute pansinusitis, and acute bronchitis. *Id.*

On February 22, 2016, Reese saw Dr. Barnes for complaints of shortness of breath and wheezing. (Tr. 297-300). She had mild scattered expiratory wheezes bilaterally. *Id.* Barnes diagnosed acute bronchitis and acute pansinusitis. *Id.* He also prescribed Xanax. *Id.*

At the request of the state agency, Reese underwent a consultative physical examination with Lee Blanton, M.D., on April 30, 2016. (Tr. 315-321). She alleged degenerative arthritis in her back, hands, and shoulders. *Id.* She also stated that she had right lower extremity neuropathy after lumbar decompression for herniated disc, with intermittent right lower extremity pain. *Id.* She took medication for her asthma as needed. *Id.* She also reported pain and difficulty in her lumbar vertebrae. *Id.* She had a history of depression, panic attacks, and bipolar disorder. *Id.* She stated that she had had hepatitis. *Id.* Reese explained that she was able to walk very short distances on level ground, but had no trouble standing. *Id.* She described difficulty lifting more than five to ten pounds with either arm. *Id.* She could drive for no more than 15-30 minutes at a time. *Id.* She also was unable to mop the floor or vacuum. *Id.* She further reported that she had undergone major back surgery on April 30, 2016 at "PNS." *Id.* Reese had a history of fatigue, and hepatitis, but no history of "IBS." *Id.* She also had a history of depression, panic attacks, bipolar disorder, and anxiety syndrome. *Id.*

Upon examination, Reese was able to get up and out of the chair without difficulty. *Id.* She also had no difficulty mounting/dismounting the examination table. *Id.* She ambulated without difficulty and without assistive device. *Id.* Her lungs were clear. *Id*. However, she did

appear to have shortness of breath at rest. *Id.* Straight leg raise tests were negative. *Id.* She was able to walk on her toes and heels. *Id.* She also could squat and recover, plus bend and touch her toes. *Id.* She had normal grip strength bilaterally. *Id.* She had normal fine and gross manipulative skills. *Id.* Her reflexes were 2+ in her extremities. *Id.* Range of motion in all her joints were normal, with no deformities. *Id.*

Dr. Blanton diagnosed degenerative arthritis in her back, hands, and shoulders. *Id.* However, he opined that she had no limitations in her ability to stand, sit, walk, bend, or stoop, reach, handle, lift, carry, see, hear, or with her memory or understanding. *Id.* She had no clinical or medical condition with evidence of disability from his examination. *Id.*

On May 19, 2016, non-examining agency psychologist, William Farrell, Ph.D., reviewed the record and opined that plaintiff's anxiety was a non-severe impairment. (Tr. 66-67).

On May 23, 2016, non-examining agency physician, Sean Neely, D.O., reviewed the record, and determined that plaintiff's RFC was limited by pain associated with arthritis of the back, hands, and shoulder and right lower extremity neuropathy associated with prior lumbar surgery. (Tr. 69-70). Pain was considered limiting. Accordingly, he assigned an RFC for light work. *Id.*

On July 27, 2016, Reese returned to Dr. Barnes for six-month follow-up. (Tr. 410-412). She took Xanax twice per day as needed for anxiety. *Id.* She still exercised four times per week. *Id.* Her lungs were clear bilaterally. *Id.* Her baseline diagnoses remained as before. *Id.*

On October 14, 2016, Billy Branch, M.D., completed an attorney-supplied medical source statement on Reese's behalf, in which he wrote that she had severe, recurrent anxiety and depression, plus chronic low back pain that limited her ability to function. (Tr. 404-405). He indicated that she would miss five or more workdays per month because of her condition. *Id.* She could only infrequently stand, walk, stoop, and climb. *Id.* She could infrequently lift up to

ten pounds, but never over ten pounds. *Id.* She occasionally could raise her arms over her shoulders, but frequently engage in fine and gross manipulation. *Id.* He characterized Reese's pain level as moderately severe. *Id.* He indicated that she would be off-task 70 percent of the workday because of pain. *Id.* She also required multiple episodes of rest each day. *Id.* However, she did not require an assistive device to walk. *Id.*

Reese initially saw nurse practitioner, Amber Robertson, at Geaux Family Health on March 3, 2017. (Tr. 451). Robertson documented a history of asthma, generalized anxiety disorder, and insomnia. *Id.* Reese was doing well on her current medication. *Id.*

Plaintiff returned to Geaux Family Health on March 17, 2017, with complaints of joint and back pain. (Tr. 450). She also complained of insomnia, but her Xanax was helping. *Id.* She reported severe depression and had tried multiple anti-depressants that caused suicidal ideation. *Id.* She complained of fatigue, lumbar pain, along with cervical pain, plus the inability to stand long periods of time because of pain, which she rated as a seven out of ten. *Id.* Robertson diagnosed lumbago, generalized anxiety disorder, insomnia, muscle spasms, and fatigue. *Id.*

Plaintiff went to the emergency room on the evening of April 15, 2017, for complaints of wheezing, and an asthma attack. (Tr. 540-553). She reported shortness of breath that started three days earlier, which had progressively worsened. *Id.* Her problem list included arthritis, back pain, depression, left hand pain, migraines, and neck pain. *Id.* She had no nausea, vomiting, diarrhea, abdominal pain, or urinary frequency. *Id.* She also had no back, neck, joint, or muscle pain, or decreased range of motion. *Id.* She had no weakness, paresthesia, headaches, numbness, or tingling. *Id.* Her lungs were clear. *Id.* She had normal range of motion and strength in her joints. *Id.* She was cooperative, with appropriate mood and affect. *Id.* She was diagnosed with upper respiratory infection, sinusitis, and asthma exacerbation. *Id.* A chest x-ray was unremarkable. (Tr. 437).

Reese next returned to Geaux Family Health on April 28, 2017. (Tr. 441). She said that she was having pain with her left hand and was unable to take Toradol. *Id.* She reported that her physical therapy was not helping. *Id.* She was very tearful that day. *Id.* Reese was afraid to take anti-depressants because of the "Black Box warning." *Id.* Robertson diagnosed left wrist pain, COPD, generalized anxiety disorder, and depression. *Id.* X-rays of the bilateral hands were normal. (Tr. 423, 438).

Plaintiff returned to Geaux Family Health on May 3, 2017. (Tr. 424). She stated that she was having a lot of pain and wanted to try arthritis pain medication again. *Id.* Every now and then, she had pain in her neck. *Id.* She stated that she went to the chiropractor once per week. *Id.* She also complained of tingling and burning in the bilateral upper extremities with decreased range of motion, and decreased range of motion in the neck. *Id.* The provider diagnosed osteoarthritis and peripheral neuropathy. *Id.*

On May 16, 2017, plaintiff saw an occupational therapist for her chronic left arm and hand pain. (Tr. 422). She stated that she had had the pain for the past six years, and that it had increased approximately one year earlier. *Id.* Range of motion was within normal limits. *Id.* She had 30-pound grip strength with her left hand and 50-pounds with her right. *Id.*

On May 17, 2017, Reese returned to Geaux Family Health for follow-up on Celebrex and Gabapentin. (Tr. 421). She still complained of upper extremity hand pain, secondary to the cervical spine. *Id.* The nurse practitioner ordered x-rays and prescribed Klonopin. *Id.*

A May 17, 2017, x-ray of the lumbosacral spine showed a mild spur formation at L3-4, but no acute fracture dislocation or subluxation evident. (Tr. 414). There was a laminectomy defect at L5. *Id.* An x-ray of the thoracic spine revealed a mild spur formation at the mid-lower thoracic spine. (Tr. 415). There also was a mild lateral convex curvature to the right. *Id.* A cervical spine x-ray showed spur formation at C4-5 consistent with degenerative changes, but

nothing else evident. (Tr. 416).

On May 18, 2017, plaintiff called Geaux Family Health and said that she took Klonopin the night before and had had a good night's sleep. (Tr. 460). However, at 1:30 p.m., she started having anxiety and asked whether she could/should take Xanax. *Id.*

Geaux Family Health notes from May 22, 2017, indicate that Reese's roommate had called to report that Reese had had a bad reaction to Klonopin. (Tr. 459). Xanax was the only medication that did not affect her negatively. *Id.* Her roommate later called back and said that she did not feel like she had gotten her message across well enough. *Id.*

On June 1, 2017, Geaux Family Health requested an orthopedic appointment for Reese at E. A. Conway Hospital. (Tr. 457). Conway responded that "Dr. Taylor" did not do spine surgery. (Tr. 523). Therefore, the PCP may treat conservatively or refer to neurosurgery. *Id.*

On June 8, 2017, plaintiff was interviewed at Bayou Mental Behavioral Health by licensed professional counselor Cynthia Montcalm. (Tr. 530-534). Reese had had a suicide attempt at age 9. *Id.* In 1993-1994, she received her first regimen of medication to stabilize her mood. *Id.* Her husband got her off the medicines and into treatment for two years. *Id.* She had had three hospitalizations. *Id.* She complained of migraines, chronic fatigue, sleep paralysis, degenerative disc disease, insomnia, history of hepatitis C (cured), two back surgeries, complete hysterectomy, and severe left-hand pain. *Id.* Reese was content living with her friend. *Id.* She stated that when she eventually was approved for SSDI, she would like to obtain her own place. *Id.* She also would like to maintain church attendance three times per week. *Id.* Her mood was anxious. *Id.* Her affect was blunted and tearful. *Id.* Her thought process was logical and coherent. *Id.* Her thought content was so anxious and depressed that she was resistant to the idea of medication without understanding "MHRS." *Id.* She had had so many suicide attempts that she could not remember them all. *Id.* Her recent and immediate recall memory were

11

normal. *Id.* However, she had some impairment to her remote memory because of periods of severe mental illness. *Id.* Her judgment was impaired because she was resistant to medication. *Id.* She had some awareness of illness/symptoms. *Id.* She was a high risk of harm to herself. *Id.* Reese presented as extremely depressed and anxious and repeated numerous times that she did not want to take medication because of side effects in the past. *Id.* She was unable to work at that time because of her poor mental and emotional health. *Id.* She was diagnosed with bipolar disorder, depressed, without psychotic features. *Id.*

Plaintiff also saw nurse practitioner Kitty Kervin, on June 8, 2017. (Tr. 535). She had been evaluated by Dr. Gullapalli. *Id.* She was calm and cooperative. *Id.* She was prescribed Xanax. *Id.* She had a history of polysubstance abuse. *Id.* She also had pain pills, but was vague about where she obtained them and from whom. *Id.* She preferred not to take any psychotic medication at that time. *Id.* She had a history of back surgeries, arthritis, and migraines. *Id.* She admitted to addiction problems – in the past. *Id*. However, she had poor insight into her failure to disclose how she obtained prescribed pain pills. *Id.*

Plaintiff was seen at Geaux Family Health on June 14, 2017. (Tr. 521). Reese had been to see a psychologist, but did not want to take the medication that was prescribed. *Id.* She still complained of neck, back, and left wrist pain. *Id.* However, x-rays all were within normal limits, as was her range of motion. *Id.* She was diagnosed with generalized anxiety disorder, insomnia, left wrist and neck pain. *Id.* She was prescribed Xanax. *Id.*

On July 12, 2017, plaintiff returned to Geaux Family Health. (Tr. 520). She was doing well on Xanax. *Id.* She was diagnosed with generalized anxiety disorder and GERD. *Id.*

Plaintiff saw Dr. Gullapalli on July 17, 2017. (Tr. 537). She was nervous about taking medication. *Id*. Her mood and affect were depressed. *Id*. She was anxious. *Id*. Her insight was good. *Id*. Dr. Gullapalli increased her Trintellix. *Id*.

12

Plaintiff saw Dr. Gullapalli on August 7, 2017. (Tr. 536). Reese reported that she had been very depressed. *Id.* She had a lot of health issues. *Id.* She had poor sleep and overactive bladder. *Id.* Her affect was sad. *Id*. She had no suicidal ideation or thought disorder. *Id.* He continued her on Trintellix and started Elavil. *Id.*

## Analysis

### I.     Step Two/RFC

Plaintiff contends that the ALJ erred when she determined that her back pain and anxiety were non-severe. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)). However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n1 (5th Cir. 1987).

Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether her step three finding and RFC are supported by substantial evidence. This is so because once at least one severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. *See* 20 C.F.R. §§ 404.1545, 416.945. Indeed, the ALJ recited the foregoing regulations, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments. *See* Tr. 15-16.

Plaintiff does not contest the ALJ's determination that her impairments do not meet or equal a listing at step three. Thus, the critical issue becomes whether the ALJ's residual functional capacity assessment is supported by substantial evidence. While plaintiff contests both the physical and mental impairment components of the ALJ's RFC, the court finds that the latter assessment is not supported by substantial evidence, and therefore, need not address the former contention.[3]

The ALJ applied the psychiatric review technique but found that for each of the four broad areas of mental functioning, Reese had no more than a mild impairment. (Tr. 17-18). For two of the areas of functioning, the ALJ relied on plaintiff's ability to read and finish books each week. *Id.* However, Reese also testified that she could read a book and then completely not remember what she had read. (Tr. 50).

As for interacting with others, the ALJ emphasized that Reese attended church regularly and was able to go shopping. (Tr. 17). At the hearing, however, Reese testified that her anxiety paralyzed her a lot. (Tr. 35-36). It also caused her not to "face" people very well. *Id.* She had tried different medications, but she could not take a lot because it caused her anxiety. *Id.* Noises made her feel like something was strangling her. *Id.* She also had ended up in several mental homes because she had tried to kill herself. *Id.* She received weekly counseling sessions, at home. *Id.*

In her assessment of plaintiff's mental impairment, the ALJ assigned "great" weight to the findings of non-examining agency psychologist, William Farrell, Ph.D., who reviewed the

---

[3] Of course, upon remand, plaintiff remains at liberty to re-urge her argument that, as evidenced by her longstanding weekly chiropractic treatments, she is limited to light work.

record on May 19, 2016, and opined that Reese's anxiety was a non-severe impairment. (Tr. 66-67). However, subsequent medical records indicate more significant treatment for plaintiff's mental impairments. *See* discussion, *supra*. Indeed, plaintiff apparently began receiving mental health counseling in June 2017. In July-August 2017, she began receiving medication for depression, which included Trintellix and Elavil. By the time of the hearing, plaintiff stated that she had been taking Trintellix for three months and that it was helping her with depression, but she still was not doing well with her anxiety. (Tr. 36-37).

In short, while Dr. Farrell's assessment likely provided substantial evidence to support the ALJ's finding that plaintiff's mental impairments were non-severe based on the treatment records and evidence before him at that time, subsequent medical records suggest a deterioration of plaintiff's mental condition to include an apparent diagnosis for depression. Again, according to plaintiff, a counselor visited with her weekly.

Under these circumstances, the court is not persuaded that there is substantial evidence to support the ALJ's determination that, throughout the length of the relevant period, plaintiff's mental impairment(s) did not cause her to suffer any material limitation of work functioning at all. Rather, by no later than July-August 2017, there is medical evidence to suggest a deterioration of plaintiff's mental impairments. The ALJ autonomously, and implicitly determined that the deterioration did not cause any limitation at all. However, in the absence of a medical source statement regarding the effects of plaintiff's mental impairments from plaintiff's treating psychiatrist, Dr. Gullapalli, or from a consultative psychologist, the court is constrained to find that the ALJ's assessment of the effects of plaintiff's mental impairments is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec.

15

10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557-558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

## II.     Step Four and Remand

Because the foundation for the Commissioner's step four determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, is likewise not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

Here, the instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

## Conclusion

For the foregoing reasons,

The Commissioner's decision is REVERSED, and the matter REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith. Judgment will be entered accordingly.

In Chambers, at Monroe, Louisiana, this 3rd day of February 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE